Filed 12/17/25  Heredia v. County of Riverside CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HERLINDA GODOY HEREDIA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF RIVERSIDE,<br><br>    Defendant and Appellant. | D085375<br><br><br>(Super. Ct. No. RIC1812786) |

APPEAL and cross-appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Judgment affirmed, cross-appeal dismissed as moot.

Law Office of Kenneth J. Melrose and Kenneth J. Melrose for Plaintiff and Appellant.

Disenhouse Law and Bruce E. Disenhouse; Arias & Lockwood and Christopher D. Lockwood for Defendant and Appellant.

INTRODUCTION

Herlinda Godoy Heredia (Godoy) was involved in a traffic accident with a sheriff's vehicle driven by Sergeant Robert Lee Thompson of the Riverside County Sheriff's Department.  She sued the County of Riverside (County) for

vicarious liability on a negligence theory.[1]  A jury found both Godoy and Thompson negligent in the accident but apportioned 90 percent fault to Godoy and 10 percent fault to Thompson.  After accounting for the comparative fault, Godoy received $10,114.40 in damages against the County.

She challenges the judgment, contending the trial court erred in: (1) denying her new trial motion based on juror and attorney misconduct; (2) permitting the County to withdraw discovery admissions and excluding the withdrawn admissions at trial; (3) excluding a report obtained from Thomas's personnel file pursuant to a *Pitchess*[2] motion; and (4) allowing a physician expert to testify about sub rosa surveillance videos that were not admitted.  She further argues the cumulative effect of these errors entitles her to a new trial.  The County filed a protective cross-appeal asserting the trial court erred by not allowing the jury to view the surveillance videos.  We conclude Godoy has failed to show any prejudicial error and affirm the judgment.  We dismiss the County's protective cross-appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND[3]

I.

*The Accident*

On a clear and dry afternoon in July 2017, Godoy was traveling eastbound on Nuevo Road.  As she approached the intersection with North

---

[1]    Godoy initially named Thompson as a defendant but dismissed him before trial.

[2]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3]    Godoy does not challenge the jury's findings regarding liability or damages, and our recitation of the background is limited to those facts necessary to provide context to the issues on appeal.  The facts related to the specific claims at issue in this appeal are discussed below.

Perris Boulevard, Thompson entered against a red light with lights and siren activated in response to an assault-with-a-deadly-weapon call. Before proceeding, Thompson stopped at the intersection, looked in both directions, and continued scanning left and right while entering the intersection. Other vehicles yielded in response to his lights and siren.

At the same time, Godoy was traveling 30 to 35 miles per hour as she approached the intersection. Nothing obstructed her view of vehicles entering the intersection. She was talking with her son and glanced at him while nearing the intersection. Godoy reported she did not see flashing lights or hear a siren as she approached the intersection. The two vehicles collided. Immediately before the collision, Thompson braked, reducing his speed from 17 to 14 miles per hour, and swerved sharply to the left. Godoy lifted her foot from the accelerator but neither applied her brakes forcefully nor changed lanes. Her speed at impact was 18 to 20 miles per hour.

II.

*Godoy's Claimed Injuries*

Godoy was taken to the hospital with head and neck pain but no loss of consciousness or back pain. Initial imaging revealed only preexisting degenerative changes, including arthritis, bone spurs, and disc degeneration, with no fractures or acute spinal injury. An MRI nearly two years later reflected the same degeneration and a newly identified herniated disc.

In 2020, Godoy underwent spinal and neck surgeries at the sites of her degenerative conditions. Her treating orthopedic surgeon opined the accident made her age-related conditions symptomatic, caused her pain by early 2019, and necessitated the surgeries. He opined she would experience chronic pain "forever."

3

## III.

### *The Trial and Posttrial Proceedings*

Godoy's case-in-chief consisted of her testimony, a witness to the accident, her treating orthopedic spinal surgeon, a coworker, three of her children, and a vocational rehabilitation expert.

The County presented a witness to the accident, an accident reconstructionist, a bioengineering expert, a vocational rehabilitation expert, a physical rehabilitation expert, a rehabilitation nurse, and medical experts in neurology, clinical psychology, orthopedic surgery, and radiology.

Godoy waived all claims for past medical expenses. She requested total damages of over $27 million, roughly consisting of $15.7 million for non-economic damages, $9 million for past non-economic damages, $2 million for future medical expenses, and $352,973 for future economic damages. The jury returned a special verdict finding both Thompson and Godoy negligent, and that their negligence was a substantial factor in causing Godoy's harm. The jury awarded damages of $101,144, which was reduced to $10,114.40 based on the jury's allocation of 90 percent fault to Godoy.

Godoy moved for a new trial, presenting the declarations of three jurors. The County opposed the motion and presented one juror declaration. The court did not rule on the parties' evidentiary objections and denied the motion without explanation. Godoy did not request oral argument.

## DISCUSSION

### I.

### *The Trial Court Did Not Prejudicially Err by Denying the New Trial Motion*

Godoy contends the trial court abused its discretion in denying her new trial motion based on both juror and attorney misconduct. We disagree there was any prejudicial error.

4

A.    *General Legal Principles*

Under Code of Civil Procedure section 657,[4] a verdict may be overturned in whole or in part, and a new trial granted, if any listed ground has a material effect on the substantial rights of a party.  (§ 657.)  Those grounds include irregularity in the proceedings and jury misconduct.  (*Id.*, subds. (1) & (2).)  The granting of a new trial is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent a clear and unmistakable showing of abuse of discretion.  (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 109 (*Weathers*).)

An abuse of discretion arises when, under the governing law and in view of all relevant circumstances, the trial court's ruling goes beyond the limits of reason and produces a miscarriage of justice.  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.)  In applying this standard of review, we conduct an independent assessment of the entire record to determine whether any error was prejudicial.  (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018.)  In determining whether an abuse of discretion occurred, we review findings of fact for substantial evidence and conclusions of law de novo.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)  The trial court's "application of the law to the facts is reversible only if arbitrary and capricious."  (*Id.* at p. 712.)

When considering a motion for new trial based on juror misconduct, the trial court follows a three-step process.  (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345 (*Barboni*).)  First, it decides whether the supporting affidavits are admissible.  (*Ibid.*)  As with other evidentiary rulings, this determination is reviewed for abuse of discretion on appeal.  (*Ibid.*)  Second, if

---

4    Undesignated statutory references are to the Code of Civil Procedure.

the evidence is admissible, the court must decide whether it establishes misconduct. (*Ibid.*) The moving party has the burden of proving misconduct, and appellate courts defer to the trial court's credibility findings and factual determinations if supported by substantial evidence. (*Ibid.*) Finally, if misconduct is found, the court must determine whether it was prejudicial. (*Ibid.*) A new trial is warranted only if juror misconduct caused prejudice. (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 57.)

A finding of juror misconduct raises a rebuttable presumption of prejudice.[5] (*Hasson, supra*, 32 Cal.3d at p. 416.) The presumption may be rebutted by evidence that there is no "reasonable probability that a result more favorable to the [party seeking a new trial] would have been obtained in the absence of the juror misconduct." (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1063 (*TRC*).) A finding of "no reasonable probability of prejudice" may rest on either an evidentiary showing that juror bias was not substantially likely, or on the reviewing court's conclusion from the entire record that the misconduct did not create a reasonable probability of actual harm. (*Id.* at pp. 1083–1084.)

Jurors' internal thought processes cannot be used to challenge a verdict. (Evid. Code, § 1150, subd. (a)[6]; *Bell v. Bayerische Motoren Werke*

---

[5]  The presumption of prejudice serves as an evidentiary tool for parties who can demonstrate significant misconduct—misconduct that was likely to influence the verdict or deny their case full consideration—but who cannot prove actual prejudice by a preponderance of the evidence. (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 416 (*Hasson*).) This rule acknowledges the steep obstacle Evidence Code section 1150 places on proving prejudice and provides some relief from that burden. (*Hasson*, at p. 416.)

[6]  This statute provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury

6

*Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124 (*Bell*).) Only evidence of concrete, observable statements, actions, or events is admissible for that purpose. (*Bell*, at p. 1124.) Juror declarations may be considered if they describe objective acts of misconduct, but they are not admissible when they attempt to explain how an incident influenced a juror's personal thought process. (*Id.* at pp. 1124–1125.) In short, Evidence Code section 1150 allows a verdict to be impeached only by evidence of improper influences that are "open to sight, hearing, and the other senses and thus subject to corroboration." (*People v. Hutchinson* (1969) 71 Cal.2d 342, 350.) For the same reason, declarations about how jurors interpreted the instructions or reached their decision are inadmissible. (*Bell,* at p. 1125.)

"[W]eighing the credibility of conflicting declarations on a motion for new trial is uniquely within the province of the trial court." (*Weathers, supra*, 5 Cal.3d 98 at p. 109.) When an issue is tried on affidavits and the evidence is conflicting, the trial court's resolution of the disputed factual issues will not be disturbed on appeal. (*Id.* at p. 108.)

Misconduct of counsel may constitute an irregularity sufficient to warrant a new trial. (*Bell, supra*, 181 Cal.App.4th at p. 1122.) When ruling on a motion for new trial based on attorney misconduct, the trial court must determine (1) whether the conduct amounted to misconduct, and (2) if so, whether that misconduct prejudiced the moving party. (See Cal. Const., art. VI, § 13; Code Civ. Proc. § 475.) When a motion for new trial is denied, the question of prejudice is not reviewed under the deferential abuse of

---

room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

7

discretion standard. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872 (*Decker*).) Instead, appellate courts independently evaluate whether misconduct caused prejudice. (*Ibid.*) Prejudice is established if it is reasonably probable that, absent the irregularity or error, the jury would have reached a more favorable verdict. (*Ibid.*) Trial courts also have broad discretion to determine whether to grant a new trial for attorney misconduct, and their decision will not be overturned absent a clear and unmistakable showing of abuse of discretion. (*Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1213.)

B.    *Analysis*

As mentioned, Godoy contends the trial court abused its discretion in denying her new trial motion based on both juror and attorney misconduct. She first argues the court erred by issuing a one-sentence denial without addressing the parties' objections to the juror declarations. In her view, had the court analyzed the declarations, it would have found prejudice sufficient to warrant a new trial. She further maintains that even if the court conducted the required analysis, it nevertheless abused its discretion by failing to grant a new trial in the face of the following, alleged serious juror misconduct: (1) consideration of excluded evidence including liens and surveillance videos; (2) concealed bias for the County and police officers; (3) refusal to deliberate; (4) failing to separately consider damages and liability; (5) conducting outside research; and (6) considered extraneous facts.

Godoy also claims entitlement to a new trial based on defense counsel's misconduct, specifically: (1) playing video surveillance of her after the trial court had excluded the evidence, and (2) questioning a witness about liens despite having stipulated that such evidence would be excluded.

8

The County responds that the trial court was not obligated to provide a detailed explanation for denying the motion. It maintains the juror declarations offered by Godoy were inadmissible to the extent they described how events affected a juror's internal thought process. With respect to attorney misconduct, the County acknowledges a technician accidentally played an excluded video but notes defense counsel immediately instructed the technician to stop and the court directed the jury to disregard it. As for the lien evidence, the County asserts counsel's reference during cross-examination was brief and the court instructed the jury not to consider the cost of past medical treatment or how it was obtained. Finally, the County argues Godoy forfeited review of prejudice by failing to address the record as a whole and omitting substantial portions of the evidence from her opening brief.

1. *The Court's Summary Ruling*

We first consider, and reject, Godoy's argument the trial court abused its discretion by denying her new trial motion in a single sentence without addressing the parties' objections to the juror declarations. Section 657 requires a court to state its grounds and reasons only when granting a new trial. It imposes no such obligation when a motion is denied, and Godoy cites no authority suggesting otherwise. Longstanding precedent holds that a trial court's judgment is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) All intendments and presumptions support the ruling, and the appellant bears the burden of affirmatively showing error. (*Ibid.*) Silence in the record is therefore construed in favor of the judgment, not against it. Because the trial court is presumed to have followed the law, "[t]he fact that the court's conclusion is set forth in summary fashion does not

9

mean the court failed to engage in the requisite analysis, or that its analysis was incorrect." (*City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1198).

Moreover, the record shows the trial court issued a tentative ruling denying the motion, and Godoy chose not to request oral argument. If she wanted further explanation or rulings on evidentiary objections, she was required to raise those issues to the trial court. Having failed to do so, she cannot now claim error. On this record, there is no basis to conclude the trial court abused its discretion by issuing a summary ruling.

### 2. *Consideration of Excluded Video Evidence*

Godoy moved in limine to exclude a series of sub rosa surveillance videos allegedly taken between April 24, 2019, and January 18, 2022, on the ground the County denied their existence during discovery. After extensive discussion, the trial court excluded the videos under Evidence Code section 352. The court, however, permitted defense counsel to ask the defense orthopedic surgeon whether he saw Godoy in those videos performing activities such as lifting a child and walking normally. Godoy's counsel raised no objection to this ruling. During his testimony, the defense orthopedic surgeon reviewed five videos, described their contents, and opined that Godoy's activities were inconsistent with her claimed limitations.

Later, during Godoy's direct examination, the court reporter noted: "Unintentional short snippet from a video shown." Godoy's counsel immediately requested a curative instruction, and the court instructed the jury: "Please disregard that, what you just saw, ladies and gentlemen. It has no bearing on anything." Before closing argument, the trial court again instructed the jurors that although the defense orthopedic surgeon testified regarding some videos, those videos are inadmissible, are not to be considered for any reason, and don't belong in their deliberations.

10

According to his declaration, Juror T.S. recalled that a video clip lasting about ten seconds was played. T.S. had his head down and did not see the video but heard defense counsel instruct the video technician to remove it and then apologize to the court. When Juror No. 2 later asked about the surveillance videos, the court again admonished the jurors to not consider the videos or their existence. According to T.S., jurors who did glimpse the video said it showed a woman of color, but it was impossible to identify the woman as Godoy. T.S. nevertheless stated that the clip became a "decision point" for some jurors.

Juror A.S., in her declaration, asserted that jurors discussed the video multiple times, believing it showed Godoy acting independently in a manner inconsistent with her courtroom demeanor and her family members' testimony. A.S. further claimed that, after seeing the video clip, most jurors discounted Godoy's injuries and refused to award damages for future pain or surgeries.

Evidence of jury discussions on an improper topic is admissible as proof of an overt act, so long as it does not delve into the subjective reasoning processes of individual jurors. (*People v. Perez* (1992) 4 Cal.App.4th 893, 907 (*Perez*).) Thus, evidence that jurors explicitly or implicitly agreed to disregard a court's instruction qualifies as misconduct, because "such agreement in and of itself constitutes misconduct." (*Id.* at p. 908.) Here, T.S. and A.S. combined admissible evidence of overt acts—jurors discussed the video clip—with inadmissible statements about how the clip allegedly

11

influenced jurors' thought processes.[7]  Their assertions that the video became a "decision point" or caused jurors to conclude Godoy was not seriously injured reflect the jurors' thought processes and are inadmissible.

The jurors' discussion of the video clip after being instructed to disregard it constitutes misconduct.  (*Perez, supra*, 4 Cal.App.4th at p. 908.)  A presumption of prejudice therefore arises, and we must examine the entire record to determine whether that presumption is rebutted.  (*People v. Merriman* (2014) 60 Cal.4th 1, 95.)  The record shows the incident was brief, the clip was played during direct examination—not cross-examination, as Godoy asserts—and the court reporter described it as a "short snippet." During a colloquy after Godoy's closing argument, defense counsel stated the clip depicted someone at the back of a car, while Godoy's counsel clarified that their joint trial technician had inadvertently displayed the clip—lasting perhaps 15 seconds—before defense counsel immediately had it removed.

Godoy's counsel failed to create an adequate record for appellate review of this issue.  Counsel did not request a sidebar outside the jury's presence to describe what the video showed, argue its prejudicial effect, or move for a mistrial.  This failure is significant because a party challenging a judgment must provide an adequate record to establish reversible error.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)  Without knowing what the approximately 15-second clip depicted, it is impossible to conclude that it prejudiced the jury in the context of a lengthy trial involving numerous medical experts.

---

[7]  Where declarations supporting a new trial motion contain evidence made inadmissible by Evidence Code section 1150, the trial court may consider the admissible portions while ignoring the inadmissible portions. (*People v. Schmeck* (2005) 37 Cal.4th 240, 306 & fn. 23, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637–638.)

This conclusion is reinforced by the position taken by Godoy's own counsel. Counsel stated at trial that none of the surveillance videos were "impeaching or prejudicial," explaining they were irrelevant because they did not show Godoy doing anything she claimed she could not do. As counsel observed, the videos did not depict her engaging in activities such as "jumping jacks," and no doctor would reasonably conclude that a person turning their neck once means they have no neck injury.

We also reject Godoy's claim that the jury's brief viewing of the video clip amounted to attorney misconduct. Nothing in the record establishes that defense counsel intentionally displayed the video clip to the jury. Rather, the record suggests the parties' joint technician accidently started the video. On this record, Godoy has not established attorney misconduct, making it unnecessary to reach the issue of prejudice.

In sum, while the jury's discussion of the video clip constituted technical misconduct, the fleeting and ambiguous nature of the clip, the trial court's immediate curative instruction, the lack of any record showing its content, and the admissions of Godoy's own counsel all rebut the presumption of prejudice. The record demonstrates no substantial likelihood that the incident biased the jury against Godoy, and therefore, the verdict should not be disturbed.

3.    *Consideration of Excluded Lien Evidence*

The parties stipulated that Godoy would not seek reimbursement for her past medical expenses, and in return, the County agreed to "not inquire about how prior medical expenses or procedures were financed." During redirect examination of Godoy's neuropsychologist, her counsel asked about the cost of prescribed treatments. The witness conceded that if Godoy lacked

13

the means to pay for treatment, it was a "logical conclusion" she would not receive it.

On recross, defense counsel asked the neuropsychologist whether he knew what a lien was. Godoy's counsel objected to the question as "outside the scope" of direct examination, but the court overruled the objection on the ground that Godoy's counsel had opened the door by raising the issue of cost. The witness responded he knew what a lien was but had never been served by one. Defense counsel then pressed further, asking if he knew whether most of Godoy's doctors were treating her on a lien basis. Godoy's counsel again objected. The court sustained the objection but declined to give a curative instruction.

The issue resurfaced when the trial court later received a jury note asking: " 'Thursday, plaintiff's counsel alluded to plaintiff's inability to pay for mental health treatment valued by the witness at $350 per session. Spinal surgery seems considerably more expensive. So my question is who paid for the plaintiff's surgeries?' " After a discussion outside the jury's presence, the court agreed a curative instruction was necessary and directed Godoy's counsel to draft one. Following revisions to counsel's proposed language, the court instructed the jury:

> "Ladies and gentlemen, the cost of plaintiff's past medical treatment and how it was obtained is not at issue in this case. Counsel's statements are not evidence. There will be no evidence relating to the cost of any past medical treatment in this case. You may not consider the cost of any past medical treatment or how it was obtained for any reason. Okay? Thank you."

Godoy asserts the mention of liens was devastating because it undermined the credibility of her treating and retained physicians. Despite the court's explicit instruction that jurors were not to consider "the cost of

14

any past medical treatment or how it was obtained for any reason," T.S. reported that jurors discussed how Godoy financed her past medical treatment. Jurors J.S. and A.S. likewise stated that liens were discussed during deliberations in violation of the court's directive. T.S. recounted that some jurors believed Godoy's medical history and future care "smelled funny" because there was no evidence of how her doctors were paid. J.S. and A.S. further reported that several jurors questioned the truthfulness of Godoy's doctors, reasoning that they stood to profit from her recovery. In contrast, Juror C.M. asserted no discussion of liens took place.

These declarations again mix admissible evidence of overt misconduct—jurors discussing liens—with inadmissible speculation about the jurors' mental processes. Still, the alleged misconduct itself is clear: T.S., J.S. and A.S. claim the jury discussed liens in violation of the court's instruction, while C.M. directly contradicts them, stating "[t]here were no comments or discussions concerning liens." This issue "comes down to a battle of the declarations, and therefore, substantial evidence." (*Barboni*, *supra*, 210 Cal.App.4th at p. 351.)

Under the substantial evidence standard of review, our "power . . . *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger v. Antoyan* (1957) 48 Cal.2d 805, 807.) "We are required to accept all evidence that supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the judgment." (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.) In the absence of express factual findings, we "must conclude that the trial court made all findings necessary to support the

judgment under any theory which was before the court." (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.)

Because assessing the credibility of competing declarations on a new trial motion lies solely within the trial court's discretion (*Weathers, supra*, 5 Cal.3d at p. 109), we must infer the trial court believed C.M.'s declaration and disbelieved the declarations of T.S., J.S. and A.S. The record thus provides substantial evidence supporting the trial court's implicit finding that no discussion of liens occurred during deliberations and, accordingly, no juror misconduct warranting a new trial was shown.

Regarding Godoy's claim of attorney misconduct for mentioning liens, the record supports the trial court's handling of the issue. The initial question—whether the neuropsychologist knew what a lien was—was permissible in light of Godoy's counsel's own reference to the cost of treatment, which opened the door to that subject. Although the follow-up question about whether most of Godoy's doctors treated her on a lien basis went somewhat beyond that scope, the court immediately sustained the objection, preventing any answer or further exploration of the issue.

The parties had stipulated that Godoy would not seek reimbursement for past medical expenses and that the County would not inquire into how those expenses or procedures were financed. Once Godoy's counsel elicited testimony about treatment costs, however, she herself stepped outside the stipulation's bounds. Defense counsel's brief question about liens was a direct, if imperfect, response to that testimony rather than a calculated attempt to prejudice the jury. Indeed, defense counsel candidly acknowledged to the court that, while Godoy's counsel opened the door, "[p]erhaps I stepped a tad too far." The court then gave a curative instruction.

16

Even if defense counsel's reference to liens constituted misconduct, Godoy has not shown resulting prejudice. (*Decker, supra*, 18 Cal.3d at p. 872.) The trial court, having considered conflicting juror declarations on whether liens were even discussed during deliberations, implicitly found they were not, and therefore properly declined to find juror misconduct. Moreover, in the context of a multi-week trial involving extensive expert testimony on liability, causation, and damages, a brief and isolated question that was immediately cut off could not reasonably have influenced the jury's verdict.

Jurors are presumed to follow the court's limiting instructions. (*Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1081.) Godoy did not include the County's closing argument in her appellant's appendix thus we can assume the isolated reference to liens was neither emphasized nor exploited in closing argument. At most, it was an inadvertent and fleeting moment in a lengthy trial, promptly corrected by the court's instruction. On this record, there is no basis to conclude defense counsel engaged in intentional or prejudicial misconduct, and the trial court acted well within its discretion in denying Godoy's motion for new trial.

4.      *Concealed Bias and Prejudgment of Case Before Deliberations*

T.S. stated that when deliberations commenced, a number of jurors "almost immediately" stated they had strong feelings in favor of Thompson. During deliberations, he relayed that some of the jurors again expressed strong feelings for Thompson. J.S. stated at the start of deliberations several jurors "were intent" on deciding zero or one percent liability to Thompson. During deliberations, other jurors stated they had strong feelings in favor of the County. A.S. similarly stated that during deliberations, some jurors had strong feelings for the County and other jurors had strong feelings in favor of police officers.

17

The statements of these three jurors that other jurors had strong feelings for a party and the implication that these jurors had made up their minds reflects their view of the mental states of other jurors during the deliberative process. These statements are inadmissible under Evidence Code section 1150. Even if admissible, juror statements of strong feelings *during deliberations* after jurors heard the evidence do not show concealed bias during voir dire or trial. Rather, it is not unusual for one or more jurors to form an opinion about the strength of a case early in deliberations. (*People v. Bowers* (2001) 87 Cal.App.4th 722, 734.) It is natural for jurors to hold preliminary opinions at the start of deliberations, and forepersons may even call for an initial vote to gauge sentiment. (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 75.) The law does not expect a juror to be "a *tabula rasa*," but it does require openness, consideration of all the evidence, and a willingness to subject early impressions to rational group discussion before deciding the case. (*Ibid.*)

Accordingly, the jurors' expressions of strong feelings during deliberations, viewed in context, reflect the ordinary process of evaluating the evidence and advocating positions rather than any impermissible bias or misconduct. Their statements do not undermine the integrity of the deliberative process or demonstrate that any juror failed to perform their duty of impartial consideration.

5. *Refusal to Deliberate*

T.S. stated that Juror No. 12 initially refused to deliberate on question one regarding Thompson's negligence. T.S. said Juror No. 12 would not discuss the issue and would simply vote " 'no.' " After another juror pointed out the weakness in his reasoning, however, Juror No. 12 ultimately agreed to reconsider. T.S. also reported that two other jurors "initially refused to

18

deliberate" on this question.  T.S. recounted that four jurors "initially refused to deliberate" on comparative fault but they later abandoned this stance and proceeded to hold votes at different thresholds.  J.S. noted one juror announced he would not change his mind "no matter the evidence," but that this juror "did indeed change his mind" after further discussion.

A refusal to deliberate constitutes misconduct.  (*People v. Lomax* (2010) 49 Cal.4th 530, 589.)  Refusal is defined as a juror's unwillingness to participate in the deliberative process, such as expressing a fixed conclusion at the outset, refusing to consider opposing views, declining to speak with fellow jurors, or physically separating oneself from deliberations.  (*Ibid.*)

Assuming the statements of T.S. and J.S. are admissible, they do not establish misconduct.  In every instance, the jurors at issue ultimately engaged in discussion, reconsidered their positions, and participated in the voting process.  Strong initial opinions do not constitute a refusal to deliberate but are a natural part of deliberation.  The evolution of jurors' positions here illustrates the very purpose of deliberation—exchanging perspectives, testing reasoning, and, when persuaded, altering one's conclusions.  That is deliberation, not refusal to deliberate.

6.    *Failure to Separately Consider Damages and Liability*

Godoy asserts the jurors committed misconduct by failing to consider damages and liability separately.  She refers us to her new trial motion claiming she "carefully laid out" all instances of misconduct with citations to authority establishing the misconduct.  In her motion, she argued the jurors disregarded the court's instruction to address each element of the special verdict form separately.

The record does not support that claim.  The trial court instructed the jury with CACI No. 5012 that each question must be considered separately,

19

but that the jurors were free to discuss the evidence and issues "in any order." The only limitation was that the questions had to be answered on the verdict form in sequence.

Godoy relies on two juror declarations. T.S. stated he believed the jury violated the instructions by not considering damages apart from liability and speculated the verdict form should have required damages to be addressed first. But this is not evidence of misconduct—it is simply T.S.'s personal disagreement with the court's instructions. To the contrary, his declaration confirms that the jury discussed the evidence in a different order than the verdict form presented—something CACI No. 5012 explicitly authorized.

J.S. recounted: "When we discussed damages, one juror stated they had a 'cap' and that '50k is as high as I will go, nothing more. That's it, that's my limit.' This was tied to the idea of not going against Officer Thompson, however, I do not recall the exact juror's vote whether they did indeed not raise a hand during any amount that exceeded that 50,000 dollar limit." Even assuming J.S.'s statements are admissible, they reflect nothing more than a juror's individual view of the evidence and proper damages. They do not suggest collective disregard of the instructions or any improper process.

Neither declaration establishes the jury failed to follow the law that the questions had to be answered on the verdict form in sequence. They show only that jurors held differing views about damages and engaged in discussion—exactly what deliberations are meant to entail. Nothing in these declarations demonstrates misconduct, much less prejudice.

7.  *Outside Research*

Godoy contends misconduct occurred when one juror conducted outside research. A.S. reported that a juror called a friend, discussed the case, and was told that drivers in Mexico receive similar training about green lights

20

and emergency vehicles. C.M. likewise recalled the same juror consulted someone about Mexican driving laws and was advised they were the same as in the United States, further noting this information did not factor into deliberations.

A juror's discussion of the case with a nonjuror constitutes misconduct. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1309.) The question, however, is whether the misconduct created a substantial likelihood of juror bias. (*TRC, supra,* 102 Cal.App.5th at pp. 1083–1084.) Where extraneous information is introduced, courts look to whether the material favored one party's position on a critical issue. (*Id.* at p. 1087.) Here, the court instructed the jurors that the driver of an authorized emergency vehicle sounding a siren and displaying a front lighted red lamp is exempt from the laws concerning red light stopping and intersection right of way if the vehicle is being driven in response to an emergency call. Against that backdrop, the extraneous statement—that Mexican law provides similar rules—did not contradict the instructions, nor did it bolster either side's case.

Accordingly, the misconduct was trivial in nature, neutral in content, and unlikely to influence the verdict. Simply put, the information neither advanced nor undermined Godoy's position, and the record does not support any substantial likelihood of actual juror bias. The presumption of prejudice is therefore rebutted, and no basis exists for disturbing the judgment.

8. *Considering Extraneous Facts*

Godoy contends jurors improperly considered the extraneous fact of how a verdict against the County would impact their taxes. T.S. stated some jurors discussed and expressed concern that a verdict in favor of Godoy would raise their local taxes and even calculated that awarding her full damages would cost approximately $11.00 per person. A.S. recalled one juror

21

expressed concern any damages award would come out of her taxes.  By contrast, C.M. did not hear any comment or discussion regarding taxes.

The statements of T.S. and A.S. are admissible only to establish the objective fact that such remarks were made, not to speculate about how they may have affected deliberations.  Although C.M. stated she "did not hear" any comments about taxes—rather than affirmatively denying their occurrence—we will assume for purposes of analysis that the subject was mentioned.

Even so, Godoy has not demonstrated that these remarks constituted juror misconduct.  The jury's task was to decide issues of negligence, liability, and comparative fault based on the evidence presented.  Nothing in the record indicates the verdict was influenced by speculative concerns about taxes rather than by the merits of the case.

Jurors are not expected to deliberate in complete isolation from their general knowledge or everyday experience, and brief, offhand comments about tax dollars do not amount to the introduction of extraneous evidence. Godoy has failed to establish either misconduct or prejudice, and the trial court properly rejected her claim.

## II.

### *No Error in the Trial Court's Evidentiary Rulings*

Godoy claims the trial court made four prejudicial evidentiary errors by (1) allowing the County to withdraw its admissions; (2) excluding the County's withdrawn admissions; (3) excluding a report obtained after a *Pitchess* hearing; and (4) allowing a physician to narrate what he saw in sub rosa videos.  We conclude Godoy has not met her burden of showing prejudicial error.

22

A.    *General Legal Principles*

Generally, "all relevant evidence is admissible." (Evid. Code, § 351.) Relevant evidence is that which has any tendency in reason to prove or disprove any disputed fact material to the outcome of the case. (Evid. Code, § 210.) A trial court has broad discretion in determining the relevance of evidence but lacks discretion to admit irrelevant evidence. (*People v. Hamilton* (2009) 45 Cal.4th 863, 940.) Nonetheless, even relevant evidence may be excluded if the trial court finds that its "probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, 600.) We may uphold its ruling on any ground if correct in result. (*People v. Brown* (2004) 33 Cal.4th 892, 901.) When evidence is excluded for the wrong reason, the ruling is not reversible if the exclusion can be justified on another proper legal basis. (*Philip Chang & Sons Associates v. La Casa Novato* (1986) 177 Cal.App.3d 159, 173 (*Philip Chang*).) The decision will be upheld so long as any applicable theory of law supports it, regardless of the trial court's stated rationale. (*Ibid.*)

Under Article VI, section 13 of the California Constitution, a judgment may not be overturned for the erroneous admission or exclusion of evidence unless, after reviewing the entire record, the court determines the error caused a miscarriage of justice. A miscarriage of justice is found only when the appellant shows that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of

23

the error." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*) [cleaned up].)  An appellate court's responsibility to conduct "an examination of the entire cause" (Cal. Const., art. VI, § 13) is triggered "when and only when the appellant has fulfilled his duty to tender a proper prejudice argument.  Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his [or her] brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

B.     *No Error in Allowing Withdrawal of Admissions*

In October 2018, the County, through its former attorney at County Counsel, Bruce G. Fordon, served responses to Godoy's form interrogatories denying liability on behalf of both the County and Thompson.  In May 2019, however, the County, through Fordon, served responses to Godoy's requests for admission that took the opposite position—admitting Thompson's negligence was the sole proximate cause of the collision and that Godoy bore no responsibility.

In July 2020, the County, through retained counsel, moved to withdraw these admissions, asserting entitlement to mandatory relief under section 473, subdivision (b), based on Fordon's declaration of fault.  It also sought relief under section 2033.300, arguing the admissions resulted from inadvertence, mistake, and excusable neglect.  In a declaration under penalty of perjury, Fordon explained he was unaware that any admission of liability required authorization by the Board of Supervisors (the Board), and that the Board had never approved the admissions or the statement that Godoy was without fault.  The parties stipulated to continue the hearing on the motion to allow Godoy an opportunity to take depositions on the issue.

The trial court granted the motion, finding the County had shown "mistake, inadvertence or excusable neglect" under section 2033.300, subdivision (b), and concluding Godoy would not be prejudiced by the withdrawal of the admissions. The court reaffirmed its ruling after oral argument. It rejected Godoy's contention that Fordon's conduct was inexcusable negligence. The court noted that Fordon had mistakenly admitted liability on behalf of the County despite denying liability in other discovery responses. Fordon further acknowledged he failed to obtain the Board's approval for the admissions and was unaware such approval was required. The court also observed that, throughout the litigation, the County and Thompson had consistently disputed liability and denied all of Godoy's allegations in their answer.

A party may request that another party "admit . . . the truth of specified matters of fact." (§ 2033.010.) A party is entitled to withdraw or amend admissions under section 2033.300 only if the court finds both that there was "mistake, inadvertence, or excusable neglect" and that "the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits." (§ 2033.300, subd. (b).) This statute prevents parties from gaining unfair advantages through requests for admission and promotes the policy of resolving cases based on their merits. (*New Albertsons, Inc. v. Superior Court (Shanahan)* (2008) 168 Cal.App.4th 1403, 1420 (*New Albertsons*).) Because the law favors resolution on the merits, doubts under section 2033.300 must be resolved for the moving party, and denial is proper only if the mistake was inexcusable or the amendment would significantly prejudice the opponent. (*New Albertsons, at pp. 1420–1421.)

We review a ruling on a motion for relief under section 2033.300 for abuse of discretion. (*New Albertsons, supra*, 168 Cal.App.4th at p. 1421.) Because the law prioritizes trial on the merits, "any doubts" must be decided in favor of the party requesting relief. (*Id.* at p. 1420.) Denial is proper only if the mistake, inadvertence, or neglect was plainly inexcusable or if withdrawal or amendment would significantly prejudice the opponent's case. (*Id.* at pp. 1420–1421.) A party's mistake, inadvertence, or neglect is excusable when a reasonably prudent person might have made the same error under the same or similar circumstances. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 [construing section 473] (*Zamora*).)

Godoy contends the trial court abused its discretion in granting relief because Fordon's mistakes did not affect the truth of the admissions themselves. She relies on *New Albertsons*, *supra*, 168 Cal.App.4th 1403, to argue the County was required to show a causal connection between its mistake and the content of the admission. She asserts the court abused its discretion granting relief without such a link.

This argument misconstrues *New Albertsons, supra*, 168 Cal.App.4th 1403. In that case, a defendant's claims administrator mistakenly admitted that a photograph depicted a bag of ice on the floor where the plaintiff fell. (*Id.* at pp. 1411, 1421.) Later testimony showed the bag in the photograph was more likely a cervical collar bag. (*Id.* at p. 1421.) The appellate court concluded the trial court erred in denying the defendant's motion to withdraw the admission because the mistake was not "clearly inexcusable." (*Id.* at p. 1421) Nothing in *New Albertsons* imposed a "causal connection" requirement, and our review of other decisions applying section 2033.300 confirms no such requirement exists. Godoy's assertion that the County had

to demonstrate a direct causal link between its mistake and the truth of the admissions is unsupported.

Godoy next argues Fordon committed ordinary negligence and that the County failed to demonstrate excusable mistake, inadvertence, or neglect. The record shows otherwise. Fordon explained that although he handled a variety of matters for the County, this was his first case defending the Sheriff's Department. His prior work involved only two personal injury matters. When preparing the responses to Godoy's requests for admission, he mistakenly believed he had authority to admit liability on the County's behalf. He had never been instructed otherwise, had no recollection of prior experience responding to requests for admissions, and was unaware that such admissions required Board approval.

The record further shows Fordon never received formal training when he joined the County in 2006 and had not been trained on how or when to seek Board approval in personal injury cases. He typically consulted senior attorneys when questions arose but, in this instance, failed to do so before filing the responses. These circumstances establish that Fordon's mistaken admission resulted from lack of training and misunderstanding of internal procedures—not from willful disregard or inexcusable neglect. Courts have consistently held that such errors fall within the scope of excusable mistake or inadvertence, particularly where, as here, a reasonably prudent person in similar circumstances could have made the same mistake. (See *Zamora, supra*, 28 Cal.4th at p. 258.)

The record demonstrates the County's mistaken admissions were the product of excusable neglect arising from Fordon's lack of training and misunderstanding of procedural requirements, not inexcusable conduct. Because section 2033.300 directs that doubts be resolved in favor of

27

permitting withdrawal and there is no showing of substantial prejudice to Godoy, the trial court acted within its discretion in granting the County relief to withdraw its admissions.[8]

C.    *No Prejudicial Error in Excluding Withdrawn Admissions*

During opening statements, the County denied any liability for the accident.  At trial, Godoy sought to admit the withdrawn admissions, contending that although no longer binding, they qualified as prior inconsistent statements by the County and were therefore admissible for impeachment.  The trial court rejected the motion, reasoning that allowing withdrawn admissions to be introduced as inconsistent statements "[made] no sense," and further explaining that the authority Godoy cited applied only in the context of summary judgment or summary adjudication where a party's declaration conflicted with its prior deposition testimony.

Godoy argues the trial court erred by excluding the withdrawn admissions, asserting they directly contradicted the County's position at trial that it bore no responsibility for the collision.  We are not persuaded.

It is well established that a jury may consider any matter bearing on a witness's credibility if it tends to prove or disprove the truthfulness of testimony.  (Evid. Code, § 780.)  Evidence introduced for impeachment or rebuttal purposes may therefore be admissible if it tends to contradict a material fact offered by the opposing party.  (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 27.)  The admission of such evidence, however, rests within the trial court's broad discretion, and its ruling will not be overturned

_____

[8]    The County also sought relief under section 473.  Given our conclusion under section 2033.300, we need not address this issue except to note that relief is unavailable under section 473 "when the discovery act provides analogous, if more limited, relief."  (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1107.)

28

on appeal absent a showing of abuse. (*Green v. Healthcare Services, Inc.* (2021) 68 Cal.App.5th 407, 420.)

While Godoy is correct that withdrawn admissions may be used for impeachment purposes (*Jahn v. Brickey* (1985) 168 Cal.App.3d 399, 404), this does not end the analysis. Even if the evidence was technically admissible, the burden remains on Godoy to demonstrate its exclusion constituted reversible error. To prevail, Godoy must show not only that the ruling was erroneous, but also that it caused a miscarriage of justice by depriving her of a reasonably probable more favorable outcome. (*Cassim, supra*, 33 Cal.4th at p. 800.)

Godoy has not met that burden. She was afforded a full opportunity to present her case that the County was responsible for the collision, and she identifies no specific way in which the absence of the withdrawn admissions impaired her ability to do so. Moreover, the trial court acted well within its discretion in impliedly concluding that admission of the withdrawn admissions would have created a significant risk of undue consumption of time under Evidence Code section 352. Had the jury been presented with the withdrawn admissions, the County would have been entitled to offer extensive testimony explaining the circumstances under which they were made and later withdrawn—an inquiry the court could have reasonably viewed as collateral and potentially confusing to the jury. (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22 ["A trial court has the inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it."].)

While the withdrawn admissions may have been admissible for impeachment, their exclusion did not undermine the fairness of the

proceedings. Godoy presented her full theory of liability, and the jury was able to evaluate the County's credibility without this additional evidence. Given the discretion afforded to trial courts in evidentiary rulings, and Godoy's failure to show that admission of the withdrawn admissions would have produced a more favorable outcome, no miscarriage of justice occurred.

D.    *No Prejudicial Error in Excluding Report*

Godoy made a *Pitchess* motion, seeking Thompson's personnel file. After a hearing, the trial court granted permission to receive documents from Thompson's file. The County provided, among other documents, a one-page document entitled "Personnel Complaint/ Disposition Report" (the Report) signed by a commander and the division chief. The report states it is an internal personnel document. Under "summary of findings" two CHP officers conducted a traffic collision investigation and determined Thompson was at fault for the collision by failing to yield to oncoming traffic. An administrative investigation concluded the collision was preventable and the allegation that Thompson operated his vehicle in an unsafe manner in "violation of Department General Order" was sustained.

The County filed a motion in limine to exclude "all documents" from Thompson's personnel file, including a deposition taken during an employment review proceeding. At the hearing on the motions in limine, the court indicated it was granting the motion. After discussing other motions, Godoy's counsel addressed the County's motion concerning Thompson's personnel file, explaining he had obtained the Report after a *Pitchess* hearing and that the court's ruling excluded the Report.

The court viewed the Report and learned it was created after a *Skelly*[9] hearing. The County argued the Report constituted the opinion of the

_____

[9]    *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194.

persons who signed it and there was no indication these individuals had the authority to speak for the County. The Court found the Report inadmissible, explaining:

> "[T]he problem is these are all things that occurred during a *Skelly* hearing. That's where you have a police officer who is up for discipline because something has happened while they were performing their duties. And those are governed by different laws of evidence, different rules. There's a memorandum of understanding between the Riverside Sheriff's Office and the County regarding how these hearings are going to be conducted. So you don't have all the safeguards that you do in a regular deposition where, you know, the defendant is subject to the things that he's subject to in a trial. So the guarantees and the guardrails are not there in place. It's a different type of proceeding."

Godoy argues the trial court erred in excluding the Report because the County's in limine motion, which addressed Thompson's personnel file, did not specifically seek its exclusion, and because the court relied on unspecified, unbriefed authority to deem it inadmissible. She further contends the exclusion was prejudicial, asserting that no reasonable jury reviewing the Report would have found her 90 percent at fault for the collision.

Although the County's motion did not explicitly mention the Report, it sought to exclude "all documents" from Thompson's personnel file. Godoy's counsel acknowledged at the hearing that he obtained the Report through a *Pitchess* proceeding. Thus, Godoy's claim that the County did not seek exclusion of the Report is contradicted by the motion itself, which encompassed all of Thompson's personnel records, necessarily including the Report. While Godoy correctly observes that the legal basis for the court's ruling is not included in the County's motion, we examine the result, not the

trial court's reasoning, and will uphold a decision if any proper legal basis exists. (*Philip Chang, supra*, 177 Cal.App.3d at p. 173.)

Godoy sought admission of the Report as a party admission. Under Evidence Code section 1222, a statement that would normally be considered hearsay may be used against a party if (1) it was made by someone authorized to speak on the party's behalf regarding the subject matter, and (2) it is introduced after sufficient evidence demonstrates that the person was authorized. Authority may be either express or implied and is evaluated under the law of agency based on the facts of each case. (*O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 570.) Determining authority requires consideration of the declarant's typical scope of authority, the relationship of the statement to that authority, and the statement's relevance or purpose. (*Ibid.*)

Here, the Report was signed by Thompson's commander and the division chief of the County's sheriff's department as part of an internal personnel review. There is no evidence in the record that these individuals were authorized to speak on behalf of the Board. Accordingly, the Report does not qualify as a party admission under Evidence Code section 1222. Its exclusion was proper.

E. *No Prejudicial Error in Allowing Video Narration*

The County's investigator recorded sub rosa videos of Godoy showing her engaging in activities inconsistent with her trial testimony. Godoy deposed the investigator, and the court reviewed the deposition and the videos outside the jury's presence. The court determined the videos were not "especially probative" under Evidence Code section 352 but noted that the County's retained physicians used the videos in reaching their opinions. Godoy's counsel agreed the County's physicians could address the videos if

they used the videos to render their opinions. The court excluded the videos from being shown directly to the jury but permitted the County's retained orthopedic surgeon to reference them and testify if they depicted Godoy acting inconsistently with her trial testimony.

The orthopedic surgeon reviewed the videos while on the stand and testified they depicted Godoy engaging in actions inconsistent with her trial testimony. Godoy later argued the orthopedic surgeon could not identify the person in the videos as her. The court offered to have Godoy testify on whether she appeared in the videos, but she declined. Later, when defense counsel sought to ask Godoy directly whether she was the person shown in the videos, she objected.

Godoy contends the trial court erred by permitting the County's retained orthopedic surgeon to describe what he observed in the surveillance videos. The County counters that the court properly allowed the expert to testify about materials he reviewed in evaluating Godoy's medical condition. In its cross-appeal, the County further argues the court erred by excluding the videos themselves from jury consideration.

The record demonstrates the orthopedic surgeon was provided the videos as part of the basis for his medical evaluation of Godoy. Before he was shown the videos at trial, Godoy's counsel objected on multiple grounds, including authenticity, hearsay, *Sanchez*,[10] and Evidence Code section 352. The trial court overruled these objections, allowing the expert to view the videos and testify about his observations. After doing so, the orthopedic surgeon testified the activities depicted were inconsistent with Godoy's claimed limitations.

---

10    *People v. Sanchez* (2016) 63 Cal.4th 665.

On appeal, Godoy renews her challenge but offers only a cursory argument consisting of three paragraphs with no citation to any authority. This bare assertion is inadequate. As the Supreme Court has explained, "[p]oints perfunctorily asserted without argument in support are not properly raised." (*People v. Williams* (1997) 16 Cal.4th 153, 206 [cleaned up].) Similarly, appellate courts have repeatedly emphasized claims lacking reasoned analysis and citation to authority are forfeited. (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 39.) Courts are not required to construct legal arguments on behalf of appellants, and Godoy's failure to develop a substantive challenge results in forfeiture of this issue.

In sum, Godoy failed to preserve a meaningful appellate challenge because she offered no legal authority or reasoned analysis to support her claim of error. Even if not forfeited, we conclude the trial court acted within its discretion in permitting the orthopedic surgeon to testify regarding the surveillance videos he reviewed as part of his medical evaluation. And even if the testimony should not have been admitted, Godoy has failed to show that its admission was prejudicial. The jury heard only the expert's interpretation of the videos—not the videos themselves—and Godoy was expressly invited to clarify whether she was the person depicted but chose not to do so. Accordingly, there is no basis to disturb the court's ruling.

### III.

#### *Cumulative Error Doctrine*

Godoy contends the above errors were individually prejudicial but argues in the alternative the "cumulative effect" of the errors warrants a new trial. The cumulative error doctrine applies when "the cumulative effect of the errors . . . make[s] it reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error[s]."

34

(*Johnson v. Tosco Corp.* (1991) 1 Cal.App.4th 123, 141 [cleaned up].) However, because lengthy trials are rarely without error, a judgment will only be reversed if it is clearly shown that the errors resulted in a miscarriage of justice. (*People v. Hill* (1998) 17 Cal.4th 800, 844.) We conclude any possible errors that we noted as non-prejudicial are not prejudicial when viewed collectively.[11]

## DISPOSITION

The judgment is affirmed. The County's protective cross-appeal is dismissed as moot. The County is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

DO, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

---

[11] Our conclusions on Godoy's appeal render the County's protective cross-appeal moot.